GUARANTY LAUNDRY CO. et al. v. PULLIAM.

No. 32624.   June 10, 1947.

*181 P. 2d 1007.*

Cantrell, Carey & McCloud, of Oklahoma City, for plaintiffs in error.

Suits & Fellers, of Oklahoma City, for defendant in error.

WELCH, J. In this action Evelyn Pulliam, as plaintiff, sues the Guaranty Laundry Company, an Oklahoma corporation, and Willis G. Sautbine, its president, to compel transfer to her of 25 shares of stock of the corporation which she had purchased from one Short.

Prior to this purchase plaintiff owned about one-eighth or one-ninth of the stock of the corporation, Carl B. Short owned a one-fourth of such stock, Willis G. Sautbine owned nearly one-half of such stock and the remaining stock was owned by others. At the commencement of this action plaintiff was secretary of the corporation and serious controversy had arisen between plaintiff and the defendant Sautbine. Defendant Sautbine declined to join as president in the transfer of the Short 25 shares of stock to the plaintiff, and following demand and presentation of stock certificate for his signature this action was brought.

There was no question as to Short's ownership of the stock and no question of fact as to his sale of his stock to plaintiff.

Defendant Sautbine sought to justify his action by his answer in the case in which he alleged in effect that before plaintiff became a stockholder in the corporation, at a meeting attended by the then owners of all the stock, it was specifically agreed by all of the stockholders that in the event one of the stockholders should consider selling his stock he would give the remaining stockholders or stockholder the first and last chance to purchase his stock; that the plaintiff, then an employee of the corporation, had actual notice or knowledge of such agreement, which was written into the minutes of the annual directors' meeting at the time it was made; that, therefore, the plaintiff had no right to buy the Short stock for herself; that her holding of the Short stock was for the benefit of all of the stockholders other than Short, each in proportion to the balance of the stock as then owned, and that, therefore, the corporation should not be required to issue certificate for the Short stock to plaintiff.

Defendant further alleged in his answer in effect that the plaintiff, being secretary-treasurer of the corporation, was thereby bound to a fiduciary relationship with the corporation and each of its other officers and stockholders, and that her attempted purchase of the Short stock for herself and without permitting the other stockholders the opportunity to acquire same or a proper portion thereof, was in violation of her obligation and duties as a fiduciary, and that she wrongfully colluded and conspired with Short and another named stockholder and other unknown persons to acquire the Short stock for herself to the exclusion of her said fiduciaries. And defendant contends that the plaintiff acquired the Short stock for herself only in a proportionate part, but acquired the balance of same for all the other stockholders in their several proportionate parts.

The trial court sustained a demurrer to the answer, and following refusal to plead further, the court rendered judgment for plaintiff which is here sought to be reversed.

The chief question is whether the stockholders' agreement above referred to precluded plaintiff, a stockholder, from purchasing for herself from the stockholder Short.

As to the construction to be placed on the stockholders' agreement, defendants contend that the Short stock could only be sold to all of the remaining stockholders in proportionate shares, while the plaintiff contends that the stockholders' agreement is satisfied by a sale of the Short stock to any one of the remaining stockholders, and that she, being one of such stockholders, was fully entitled to buy it for herself.

The trial court construed the stockholders' agreement to have the meaning contended for by plaintiff, and we must review that construction.

We have observed the authorities cited dealing with similar stockholders' agreements. It is emphasized that such agreements generally have the purpose of preventing stock transfers to outsiders without first providing an opportunity by which the stock desired to be sold may be left with another stockholder or stockholders. It is often referred to as a plan to prevent transfer of stock to "outsiders." And it has been said the restriction will be strictly construed, and not enlarged by implication.

We deem it unnecessary to do more than cite those cases and state that upon such authority, and in our view of the language used, the stockholders' agreement here involved is properly subject to the construction given it by the trial court. See Rychwalski v. Milwaukee Candy Co., 205 Wis. 193, 236 N. W. 131; Serota v. Serota, 5 N. Y. S. 2d 68; Gibbon v. 3920 Lake Short Drive Building Corporation, 310 Ill. App. 385, 34 N. E. 2d 109; Mason v. Mallard Telephone Co., 213 Iowa, 1076, 240 N. W. 671, and Sterling Loan & Investment Co. v. Litel, 75 Colo. 34, 223 P. 753.

The agreement made by the stockholders was not reduced to writing and signed by the stockholders, but apparently was arrived at in or in connection with an annual meeting of the directors and was written into the minutes of the directors' meeting. It is recited in the minutes of the directors' meeting, "that all directors and stockholders were present or present by their proxy," and the stockholders' agreement as to stock sale is written into the minutes of that meeting in the following language:

"It is agreed by all stockholders that in the event one of the stockholders considers selling his stock he will give the remaining stockholders or stockholder, the first and last chance to purchase his stock."

While this agreement undoubtedly might have gone further so as to state that any transfer of stock should first be made available to all the other stockholders in proportion to their holdings of stock, as contended for by defendants here, it did not do so.

Such detail was provided for in the case of Boswell v. Buhl, 213 Pa. 450, 63 Atl. 56. See, also, Fitzsimmons v. Lindsay, 205 Pa. 79 54 Atl. 488; Wilson v. Bowers, 57 Fed. 2d 682; Baumohl v. Goldstein, 95 N.J. Eq. 597; In re Fieux's Estate, 241 N. Y. 277, 149 N. E. 857, and Vannucci v. Pedrini, 217 Cal. 138, 17 P. 2d 706. No case is cited where the agreement relied upon was in substantially the language here used, nor any case where the agreement was shown only by brief statement in minutes of a directors' meeting as here.

As stated above, we conclude that it may reasonably be construed, as held by the trial court, that the agreement was satisfied by sale to a remaining stockholder, as well as to all of the remaining stockholders. In this connection we observe that neither of the parties makes any specific allegation as to the intention of the agreement or as to any construction thereof by any of the parties thereto, except as indicated by the conduct of the parties to this action in connection with the present controversy. Thus both parties stand upon their contention based upon a construction of the words used. We cannot say that the contract as expressed in the above words goes to the extent contended for by the defendants, or that the construction thereof by the trial court was erroneous, and we approve that construction in line with the contentions of the plaintiff.

We have not overlooked the plaintiff's contention that in any event the stockholders' agreement here alleged is not binding upon her, but we deem it unnecessary to discuss or determine that point, in view of our construction of the agreement referred to.

The defendant contends that the demurrer to defendants' answer in the trial court called into consideration the sufficiency of plaintiff's petition and should have resulted in a sustaining of a demurrer to plaintiff's petition. In effect it is contended that plaintiff's petition was insufficient because the stock certificate tendered by plaintiff for issuance to her to effect the transfer of the Short stock to her was not in proper form in that it did not show certain statements or endorsements as required by statute. Upon that point it is our view that, assuming the form of stock certificate tendered by plaintiff was defective, it was the duty of the defendant corporation and its president, defendant Sautbine, to write the certificate and endorse it in full compliance with the statutory law. Furthermore, it does not appear that any such defect in the form of the tendered certificate constituted any part of the reason of the defendant for declining to so transfer the 25 shares of stock from Short to the plaintiff.

And we observe that in connection with the staying of the trial court judgment as authorized by statute, 12 O. S. 1941 § 968, the defendant executed and filed a stock certificate showing all endorsements required by law.

We find no controlling merit in this contention.

The defendant also contends that his answer alleges that the plaintiff wrongfully colluded and conspired with Short, another stockholder, and other persons unknown, to acquire the Short stock for herself, for her sole benefit and profit to the exclusion of her fiduciaries, the corporation and the other stockholders. It is urged that in that manner the answer alleges the tendered issue of fact which would make erroneous the sustaining of a demurrer to the answer. As we view the matter, those allegations or statements or conclusions are made in connection with defendant's contended construction of the stockholders' agreement, and in connection with the claim of the fiduciary relationship claimed to exist. If the stockholders' agreement should be construed as contended for by defendant so as to make wrongful the private or personal transaction between Short and plaintiff, then the plan of such transaction might well be said to be a wrongful collusion and conspiracy, but not so in view of the construction arrived at by the trial court and here approved.

While it is true that plaintiff was a stockholder and was secretary-treasurer of the corporation, and was in many respects a fiduciary of the corporation, and therefore to some extent a fiduciary to the other officers and stockholders, we are cited to no rule of law to the effect that an officer in a corporation may not purchase additional stock therein without first affording opportunity to other officers or stockholders to share in such stock about to be transferred. Since plaintiff was not obligated by any rule of law to afford such opportunity to her associates, and since, as we have found, the stockholders' agreement did not require it, then she was free to buy this stock for herself and such acquisition did not violate any fiduciary duty or responsibility. See Tippecanoe v. Reynolds, 44 Ind. 509, 15 Am. Rep. 245; Deaderick v. Wilson (Tenn.) 8 Baxt. 108; Farmers & Merchants Bank v. Wasson, 48 Iowa, 336, 30 Am. Rep. 398.

The answer alleged no other wrongful act committed by plaintiff nor any other wrongful purpose in her acquisition of the Short stock. And we conclude that the answer tendered no issue of fact. While defendants argue that the trial court determined issues of fact in sustaining the demurrer to the answer, we conclude to the contrary.

Defendant Sautbine also seeks by cross-petition to have plaintiff decreed to hold the Short stock in trust for the benefit in part of himself and other stockholders. Our former discussion and conclusions make it unnecessary to further discuss that point.

It follows that plaintiff was within her rights in purchasing the Short stock and that the corporation should have made proper certificate issue to effectuate the transfer of such stock to the plaintiff. We conclude that plaintiff is the owner of the 25 shares of stock standing on the corporation records in the name of Carl B. Short, and that this is an appropriate action in which to so adjudicate and to require the corporation to make such change of ownership and such transfer of stock effective on its records and by certificate issued. We conclude that the defendant Sautbine was not justified in his refusal as president of the corporation to so transfer such stock, and that the judgment of the trial court is correct.

Affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, OSBORN, BAYLESS, CORN, and GIBSON, JJ., concur.