Emanuel **SCHONWALD**, Plaintiff in Error,

v.

Junia S. **CASSELL**, Executrix of the Estate of Dave Schonwald, Deceased, Defendant in Error.

No. 42645.

Supreme Court of Oklahoma.

Sept. 8, 1970.

Rehearing Denied Oct. 27, 1970.

Smith, Smith & Cook, by Wilbert G. Smith, Oklahoma City, for plaintiff in error.

Felix, Bowman & McIntyre, by Byrne A. Bowman, Oklahoma City, for defendant in error.

McINERNEY, Justice:

This appeal is from the probate of the estate of Dave Schonwald, who died in 1964, and involves one share of stock in the Oklahoma City Golf and Country Club, a corporation, which was issued to the decedent in 1927. Mrs. Junia Schonwald Cassel, Executrix of the estate (and also decedent's daughter), filed a petition to sell the stock and issued a citation to the decedent's son Emanuel Schonwald (Defendant) to show cause why the share should not be sold. The County Court found and held that "Dave Schonwald, during his lifetime, in 1961 attempted to make a gift of said share to Emanuel Schonwald, that said attempted gift was ineffectual due to the fact that Emanuel Schonwald was not elected to membership in said club as provided by its by-laws, and that, accordingly the said share is owned by the Estate of Dave Schonwald, deceased." The District Court upheld the order of the County Court.

Emanuel Schonwald claimed the share as donee of an inter vivos gift made to him by the decedent. The certificate bore the decedent's signed endorsement in favor of Emanuel Schonwald and the signature of the decedent's secretary as a witness. The endorsement further bore the date of December 1, 1961. The evidence demonstrated that the deceased was not present in Oklahoma City on December 1, 1961, as first testified to by Defendant. Defendant later changed his testimony to the effect that the date of endorsement and delivery of the certificate was sometime around August, 1961. The secretary signing as a witness died on December 2, 1961. Correspondence to Defendant from the club showed that the Defendant submitted the certificate bearing his father's signature to the Oklahoma City Golf and Country Club early in 1962 for transfer on its books. The record fails to disclose that the deceased ever made any move to protest Emanuel's open attempt in 1962 to have the transfer of the share herein registered upon the club's books. Defendant's application for membership in the club was later rejected. The unresolved uncertainty of the actual date of the factually-found transfer—so long as prior to the decedent's death in 1964—is of no material effect. We cannot say from our examination of the evidence in its totality that the finding of the trial court that "Dave Schonwald, during his lifetime, in 1961 attempted to make a gift of said share to Emanuel Schonwald—" is against the clear weight of the evidence. Murdock v. Loeffelholz, Okl., 421 P.2d 236 (1966).

This controversy between a daughter-Executrix and son-donee hinges, therefore, upon the purely legal question of whether the inter vivos gift operated here to invest the donee with such a proprietary interest in the stock as to prevent it from becoming an asset of the estate.

The by-laws do not contain any express provision restricting the proprietary incidents of stock ownership to a person first attaining club membership. Actually, the inverse is expressed; that a purchaser of stock shall not be automatically elected to membership, and that every active member shall be the owner of one share of stock. Provision is even made in Article II, Section 4, for the sale of the stock at public auction to the highest bidder on non-payment of dues and charges constituting a lien. The by-laws, generally, regulate the enjoyment of club membership privileges without restricting the transferability of stock. At any rate, internal corporate regulatory mandates on the otherwise free transferability of stock must be strictly construed and restrictions on alienation will not be inferred unless clearly implied. Guaranty Laundry Co. v. Pulliam, 198 Okl. 667, 181 P.2d 1007, 2 A.L.R.2d 738 (1947); Dobry v. Dobry, Okl., 262 P. 2d 691 (1953).

The certificate of stock has printed upon the face thereof, in compliance with Article VII of the by-laws, the legend that the share is "transferable only on the books of the Corporation by the holder hereof in person or by Attorney upon the surrender of this Certificate properly endorsed. No transfer of this stock can be made except in accordance with the by-laws of the Corporation and no transfer shall confer upon the transferee any of the privileges of the Club except as provided by the by-laws." The Executrix contends that the foregoing provision of the by-laws constituted a restraint upon the alienation of the decedent's stock, and made the transfer herein contingent upon the corporation's ratification thereof, expressible only by its registration of the transfer upon the corporate books. She further contends that 18 O.S.1961, § 1.110(b), providing that "The transfer of certificates of shares and the shares represented thereby may be regulated by the by-laws, insofar as not inconsistent with the provisions of this Act," is statutory authority permitting the enactment of by-laws establishing such restraints on alienation.

However, 18 O.S.1961, § 1.85 (repealed subsequent to the transfer herein) provides, in part, that a share of stock may be transferred by delivery of the certificate endorsed by the owner, notwithstanding any by-law or certificate imprint stating that the share is transferable only on the books of the corporation. Moreover, the purpose of the typical requirement that stock be transferable only upon the books of the corporation is universally regarded as being only a measure for the corporation's own internal administrative convenience and protection. 12 Fletcher, Cyc.Corp. (1957 Rev.Ed.) § 5489, p. 437; Vliet, "The Oklahoma Business Corporation Act," 2 Okla. L.Rev. 177, 206 1949), citing Christy and McLean, The Transfer of Stock, 2nd Ed., 61, 64 (1940). Non-entry upon the corporate books does not affect or defeat any rights as between the transferor and transferee themselves. Fletcher, op. cit.; Re Estate of Connell (1925) 282 Pa. 555, 128 A. 503, 38 A.L.R. 1362; Kitzinger v. Millin, 254 Iowa 173, 117 N.W.2d 68 (1962). See also Annotation, "Transfer on Corporate Books as Requisite of Gift of Stock," 38 A.L.R. 1366; 18 Am.Jur.2d Corporations, § 412; 38 Am.Jur.2d Gifts, §§ 49, 53; and the Comment by the Commissioners on Uniform Interstate Legislation, reproduced following Section 1 of the Uniform Stock Transfer Act (similar to 18 O.S.1961, § 1.85) in 6 U.L.A. "Uniform Stock Transfer Act," § 1.

Furthermore, the club appears to recognize the right of Emanuel Schonwald to receive the proceeds upon the sale of the share. In informing him by letter that his application for membership had not been approved, the President of the club stated a value of the share which "can be sold through the club," and requested his advising the club if he desired that this be done. The corporation did not, therefore, so construe its by-laws as to prohibit the transfer by Dave Schonwald to Emanuel Schonwald, or to defeat Emanuel's power

to alienate the stock. The club dealt with Emanuel Schonwald as the transferee of the stock entitled to the proceeds from its sale.

We find no restriction in the by-laws against the inter vivos gift of the share of stock here to the donee. The inter vivos gift invested the donee with the power to alienate the stock and to receive the proceeds thereof. This power prevented the share from becoming an asset of the estate. Our conclusion is based solely on the by-laws of the Oklahoma City Golf and Country Club as applied to the decedent's inter vivos gift of the share of stock in 1961.

The judgment of the trial court is reversed.

IRWIN, C. J., and DAVISON, WILLIAMS, BLACKBIRD, JACKSON, HODGES and LAVENDER, JJ., concur.