OPINION OF THE COURT
Irad S. Ingraham, J.
Plaintiffs move for summary judgment on their complaint seeking specific performance of a corporate agreement to *973 purchase the defendant’s shares of their family corporation. The defendant cross-moves for dismissal of the complaint and declaratory judgment effectuating a valuation and transfer of his shares under the Business Corporation Law.
FACTUAL BACKGROUND
The individual parties are the principal shareholders in James Mirabito & Sons, Inc., a domestic corporation which is also designated a plaintiff herein. The plaintiffs bring action against the defendant for specific performance of a stock purchase agreement executed by the parties in March 1972. The pertinent paragraph of the agreement provides: "No stockholder shall during his lifetime transfer, encumber or dispose of any portion or all of his stock interest in the Corporation except that if a stockholder should desire to dispose of any of his stock in the Corporation during his lifetime, he shall first offer to sell all of his stock to the Corporation at a price determined in accordance with the provisions of Article 3. Any shares not purchased by the Corporation within 120 days after receipt of such offer in writing shall be offered at the same price to the other stockholders, each of whom shall have the right to purchase such portion of the remaining stock offered for sale as the number of shares owned by him at such date shall bear to the total number of shares owned by all the other stockholders excluding the selling stockholder” (emphasis added). The nexus of the plaintiff’s contention is that the defendant triggered the buy-out provision on or about July 27, 1986 by petitioning this court for a dissolution of the corporation pursuant to section 1104-a of the Business Corporation Law. The defendant sought dissolution because he claimed that: "the Directors and those otherwise in control of the Corporation have been guilty of illegal, fraudulent and oppressive actions against the Petitioner”. The plaintiffs in their complaint allege that the defendant’s attempt to dissolve the corporation constitutes an attempt to ”dispose of ” his stock as that phrase is used in the agreement. Further, the plaintiffs seek purchase of the shares at a value calculated in accordance with article 3 of the agreement. Article 3 of the agreement in pertinent part provides:
"The stockholders and the Corporation agree to redetermine the value of the Corporation and their respective interests therein within 90 days following the end of each calendar *974 year. The value so agreed upon shall be endorsed on Schedule A attached hereto and made a part of this agreement * * *
"If the stockholders and the Corporation fail to make a redetermination of value for a particular year, the last previously stipulated value shall control”.
Plaintiffs seek, in their complaint, a purchase of the defendant’s shares in accordance with the last executed schedule A, a document executed on December 31, 1983. In that schedule defendant Anthony T. Mirabito and plaintiffs Rosario A. Mirabito, Thomas J. Mirabito, and Angelo J. Mirabito agreed that the defendant’s 25 shares had a total value of $108,459.75.
CONCLUSIONS OF LAW
The plaintiffs’ position is untenable and accordingly their summary judgment application must be denied. Neither in the terms of the agreement nor by application of Business Corporation Law § 1118 can support be found for the interpretation claimed by plaintiffs.
The purchase provisions contained in Business Corporation Law § 1118 do not trigger the operation of article 1 of the agreement. A shareholder seeking dissolution of a corporation pursuant to Business Corporation Law § 1104-a does not offer his shares for sale. Rather, the operation of Business Corporation Law § 1118 is more properly characterized as a forced sale. (Davidian, Corporate Dissolution in New York: Liberalizing the Rights of Minority Shareholders, 56 St. John’s L Rev 24, 46, 70 [1981].) The mere commencement of a corporate dissolution proceeding does not automatically result in the sale and purchase of a petitioner’s shares. (Business Corporation Law § 1118.) The operation of Business Corporation Law § 1118 necessarily runs independent of any shareholder’s agreement containing a right to purchase at a set purchase price. The plain wording of Business Corporation Law § 1118 requires that any purchase thereunder be at a fair value determined by the court. Accordingly, the defendant did not offer to sell his shares at a price set forth in the agreement merely by commencing a dissolution proceeding pursuant to Business Corporation Law § 1104-a.
With reference to the terms of the agreement itself, in order to prevail plaintiffs must establish that application for dissolution of the corporation pursuant to the Business Corporation Law constitutes a disposal of stock as contemplated by article 1 of the agreement. Plaintiffs fail to establish such construe *975 tion. The plaintiff corporation is family owned and operated and the agreement manifests the intent of the parties to maintain that posture. The language used in the agreement is patently designed to prevent the unilateral action of a stockholder in transferring stock to outsiders. The language used in a written instrument shall be considered in the context of the entire agreement. (Zodiac Enters v American Broadcasting Cos., 81 AD2d 337, 339; A&Z Appliances v Electric Burglar Alarm Co., 90 AD2d 802.) The parties to the agreement do contemplate a dissolution, referring to that eventuality in article 6 of the agreement. They provide for the termination of the agreement on dissolution. Clearly then by utilization of the word dissolution in article 6 of the agreement, it is inconceivable that the signatories intended the phrase "dispose of’ to mean dissolution in article 1 of the agreement. Had the signatories intended dissolution to trigger further operation of the agreement they had only to specifically set forth the word as it was set forth in article 6. Secondly, article 6 provides that the agreement is not operable upon dissolution.
The result reached in Cicero Indus. Dev. Corp. v Roberts (63 Misc 2d 565) is not inapposite to the conclusion that dissolution is not covered by the phrase "dispose of’. Plaintiffs describe the situation in Cicero as one where "[s]ame shareholders voted to dissolve the corporation and sell all of its assets to outside interests.” In the opening paragraph of the decision in Cicero, the relief sought by the plaintiff is characterized as a determination that the defendants therein must sell their stock pursuant to a shareholders’ agreement and that the defendants be enjoined from selling corporate assets or dissolving it pending transfer of the stock. (Cicero Indus. Dev. Corp. v Roberts, 63 Misc 2d 565, 569, supra.) In the opinion, however, the issue of the case is treated as one regarding a sale of stock. (Supra, at 568, 569.)
The same conclusion is reached with respect to Du Pont De Nemours & Co. v Pathe Film Corp. (25 F Supp 850). The agreement in question in Du Pont did not contain verbiage similar to that in the subject agreement.
The eventuality contemplated and prohibited in article 1 is the disposal of stock to outsiders. Only in such instance is the drastic remedy of a forced sale at predetermined value trig *976 gered. The words are clear and admit of no other interpretation when read in the context of the entire agreement.
The conclusion that the defendant’s commencement of the dissolution proceeding does not constitute an attempt to "dispose of’ his stock requires a denial of the plaintiffs summary judgment motion.
Defendant’s cross motion is granted to the extent it seeks a dismissal of the plaintiffs complaint. In view of the conclusion that the defendant’s dissolution attempt does not constitute an attempt to "dispose of’ his stock, the plaintiffs have no cause of action for specific performance. As a matter of law, the defendant is not entitled to summary judgment. Additionally, as a matter of procedure, the defendant in no event can obtain summary judgment prior to joinder of issue. (CPLR 3212; City of Rochester v Chiarella, 65 NY2d 92; Milk v Gottschalk, 29 AD2d 698; Schoenborn v Kinderhill Corp., 98 AD2d 831; contra, Kreitman v Einy, 92 AD2d 801, appeal dismissed 59 NY2d 730.)
To the extent, however, defendant seeks an order declaring plaintiffs’ complaint to be an election under Business Corporation Law § 1118 (a) the motion is denied. It is true that an election under section 1118 (a) may occur in an implied fashion without formal manifestation. (Matter of Barry One Hour Photo Process, 111 Misc 2d 559, 566, further proceeding sub nom. Matter of Taines v Barry One Hour Photo Process, 123 Misc 2d 529, affd 108 AD2d 630, appeal dismissed 66 NY2d 757; Matter of Topper v Park Sheraton Pharmacy, 107 Misc 2d 25, 28, 29.) Where, however, a prospective purchaser’s manifestation is ambiguous, the better procedure is to allow the prospective purchasers additional time to execute a clear, unambiguous and unconditional letter electing the purchase of the defendant’s shares at their "fair value” as determined by this court. (Matter of Barry One Hour Photo Process, supra, at 566.) Herein, there is some ambiguity as to whether the plaintiffs will elect to purchase the defendant’s shares at their "fair value” as opposed to the value ascribed to them in the inapplicable shareholder’s agreement. Accordingly, the plaintiffs are afforded 30 days from receipt of this decision to elect with the requisite formality to purchase the defendant’s shares at their "fair value” upon such terms and conditions as may be approved by the court. (Business Corporation Law § 1118 [a].) During this 30-day period, the original stay of the *977 dissolution proceeding is continued. Should no election occur within 30 days, the dissolution proceeding may continue as originally provided in the order to show cause signed by the Hon. Parker J. Stone. Should an election occur, the dissolution proceeding shall be stayed and a determination of the fair value of the defendant’s shares shall be made. (Business Corporation Law § 1118 [b].)